THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PACIFIC SOUND RESOURCES, a Washington non-profit corporation; and THE PORT OF SEATTLE, a Washington municipal corporation,<br><br>Plaintiffs,<br><br>v.<br><br>THE BURLINGTON NORTHERN AND SANTA FE RAILWAY CO., a Delaware corporation; J.H. BAXTER & CO., a California limited partnership; J.H. BAXTER & CO., a California corporation; and J.H. BAXTER & CO., INC., a California corporation,<br><br>Defendants. | Case No. C04-1654L<br><br>**DEFENDANT THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION FOR STAY**<br><br>NOTE ON MOTION CALENDAR:<br>May 13, 2005 |

Defendant The Burlington Northern and Santa Fe Railway Company ("BNSF") opposes Plaintiffs' motion to stay this case pending the uncertain resolution of their appeal in a related state court action. None of the categories of the United States Supreme Court's abstention doctrine applies, and this case does not present any "extraordinary circumstances" that might warrant a stay for reasons of wise judicial administration under the *Colorado River* doctrine.

---

THE BNSF RAILWAY CO.'S OPPOSITION TO PLAINTIFFS' MOTION FOR STAY

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236 (1976).

Plaintiffs chose to file this action while simultaneously pursuing their appeal in state court. Now, ten months later, they argue that a stay is appropriate in the interests of judicial economy, but have cited no authority for staying a federal action, after a state trial court has entered judgment against the party seeking the stay, to await a determination whether the state judgment is reversed on appeal. Moreover, the Defendants in this action have asserted numerous counterclaims, including counterclaims under federal law over which this Court has exclusive jurisdiction. Because this case raises issues of federal law and the state court proceedings will not resolve all the issues presented in this action, issuance of a stay is precluded under controlling precedent.

## I. STATEMENT OF FACTS

The procedural facts relevant to Plaintiffs' motion are:

- In September 2002, Plaintiffs filed an action in King County Superior Court ("Superior Court Action") to recover remedial action costs they allegedly incurred at the former Wyckoff West Seattle Wood Treating Plant ("the Plant").
- The Superior Court ruled that Plaintiffs' claims associated with the Plant are barred by the applicable statutes of limitations and entered final judgments for BNSF and the Baxter defendants.
- The Superior Court determined that Plaintiffs had not presented claims for costs allegedly incurred to investigate and remediate contaminated marine sediments in an offshore area adjacent to the Plant, but clarified that Plaintiffs were free to assert such claims in a separate action.
- On the same day Plaintiffs appealed the judgments entered in Superior Court Action, they filed this case in King County Superior Court seeking contribution for costs they allegedly incurred in the marine sediments only.
- BNSF and Baxter removed this case to this Court based on diversity of citizenship.

Though the procedural facts are undisputed, BNSF is compelled to correct or clarify a

number of factual assertions in Plaintiffs' motion.  First, though Plaintiffs claim the Superior Court erred in determining that they had not presented claims for costs incurred in the marine sediments, in their motion for clarification, Plaintiffs asked the court to confirm either:  (1) that their claims for costs incurred in the marine sediments had not been dismissed; or (2) that the court had determined that they had not stated claims regarding the marine sediments but were free to do so in another action.  Declaration of Marc A. Zeppetello In Support of BNSF's Opposition ("Zeppetello Dec.") at 3-9.  The court granted Plaintiffs' motion in part by signing one of the proposed orders submitted by Plaintiffs, confirming that they were free to assert claims related to the marine sediments in a separate action.  Thus, Plaintiffs not only got one of the alternative forms of relief they requested, but they decided to file a new action to pursue their marine sediments claims while simultaneously appealing the judgments in the Superior Court Action.

Second, Plaintiffs state that in their Answers in this action, Defendants raised all of the same defenses as in their Answers in the Superior Court Action.  BNSF has asserted a number of additional affirmative defenses in this case, including defenses specifically applicable to the marine sediments.  Moreover, both BNSF and Baxter have asserted counterclaims in this action that they did not assert in the Superior Court Action, including counterclaims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") over which this Court has exclusive jurisdiction.  42 U.S.C. § 9613(b).

Third, Plaintiffs mislead the Court by submitting a figure of the "PSR Site" which they contend shows "continuous plumes of contamination extending from the wood-treating plant to the sediments."  Plaintiffs' Motion at 2.  The figure provided by Plaintiffs is from the Final Upland Groundwater Remedial Investigation and Feasibility Study Report, not from a report prepared on the marine sediments, and does not show the entire PSR Superfund Site.  Moreover, the figure shows only one type of impact to the near-shore area, not all of the pollution sources that impacted the approximately 50 acres of contaminated marine sediments.

Finally, Plaintiffs mislead the Court by stating that "the Superior Court has expressed its own uncertainty about whether its ruling on summary judgment was correct."  Plaintiffs' Motion

at 8. The Superior Court noted that "success on the statute of limitations defense was by no means a foregone conclusion," in rejecting Plaintiffs' argument that Defendants' requests for attorneys' fees and costs should be limited to those incurred pursuing this defense and concluding instead that Defendants did not act unreasonably in investigating other aspects of the case. Ex. E. to Tan Decl., page 3.

## II.  ARGUMENT

Federal courts have the "virtually unflagging obligation" to exercise the jurisdiction given them. *Colorado River*, 424 U.S. at 817-18 (citations omitted). Nevertheless, issues occasionally arise, in a wide range of contexts, whether a district court should dismiss or stay a claim properly before it pending resolution of the same or a similar claim in a state forum. Plaintiffs fail to provide an accurate statement of the law on this subject, but rather, cite indiscriminately to various cases containing language they like, and which appear to support their argument for a stay, without addressing the different contexts presented by many of those cases in relation to this one.[1]

Here, none of the categories of the Supreme Court's abstention doctrine, under which a district court may decline to exercise its jurisdiction in consideration of pending state court proceeding, is applicable. Moreover, this case does not present "exceptional circumstances" that might warrant a stay pending the uncertain resolution of Plaintiffs' state court appeal in the interests of wise judicial administration.

A. **The Abstention Doctrine Does Not Apply To This Case**

The Supreme Court has confined the circumstances appropriate for abstention to three categories of cases. These categories are commonly referred to as *Pullman*, *Burford*, and *Younger* abstention for the leading Supreme Court cases in which each was articulated. *See Colorado River*, 424 U.S. at 814-17 (discussing the three categories of abstention). None applies

---

[1] For example, Plaintiffs rely on *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163 (1936), which involved a number of federal actions pending simultaneously in different district courts raising similar issues concerning a federal statutory program. The issue in *Landis* was whether a stay was warranted to avoid duplicative *federal* district court litigation. *Landis* did not involve many of the additional considerations that may arise when there are concurrent federal and state proceedings. *See generally Colorado River*, 424 U.S. at 813-18.

to this case.

*Pullman* abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Id.* at 814 (citations omitted). This case presents no federal constitutional issue.

*Burford* abstention is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.* This case presents issues of state law, possibly including issues of first impression under the Washington Model Toxics Control Action ("MTCA"), but it is a dispute among private parties that will be resolved based on a unique set of facts. Because federal adjudication of this case would not disrupt a state program "to establish a coherent administrative policy with respect to a matter of substantial public concern," *Easter v. American West Financial*, 202 F.Supp.2d 1150, 1153 (W.D. Wash. 2002), it does not implicate *Burford* abstention.[2]

*Younger* abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining a state proceeding. *Colorado River*, 424 U.S. at 816 (citations omitted); *Privitera v. Cal. Bd. of Medical Quality Assur.*, 926 F.2d 890, 895 (9th Cir. 1991). *Younger* abstention also does not apply to this case.

Plaintiffs rely heavily on a 1975 district court decision from New York which invoked what that court itself characterized as an abstention doctrine "which is not uniformly recognized, namely, that of 'abstaining' in a run-of-the-mill diversity action where a state court action raising the same issues is simultaneously pending." *Universal Gypsum of Georgia, Inc. v. American Cyanamid Co.*, 390 F.Supp. 824, 825 (S.D.N.Y. 1975). While noting that some courts of appeals allow a district court the discretion to stay its proceedings in deference to pending state court

---

[2] In contrast, in *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098 (1943), the Supreme Court held that the district court should have dismissed a suit seeking review of the reasonableness under Texas law of a state commission permit to drill oil wells. The Supreme Court determined that federal court review of such permits in that case and future cases would have had an impermissibly disruptive effect on state policy for the management of oil fields, particularly because the state had established its own elaborate review system for dealing with the geological complexity of oil and gas fields. *Colorado River*, 424 U.S. at 814-15 (discussing *Burford*).

THE BNSF RAILWAY CO.'S OPPOSITION TO PLAINTIFFS' MOTION FOR STAY      5

338844.1

action, *Universal Gypsum* recognized that other appellate courts, including the Ninth Circuit, "express the view that a federal district court should not stay its hand in deference to a pending state court action except in exceptional circumstances where resort to state court serves an important interest in the orderly administration of justice." *Id.* at 825-26 (citing *Mach-Tronics, Inc. v. Zirploi*, 316 F.2d 820, 826-28 (9th Cir. 1963)). Given that neither the Supreme Court nor the Ninth Circuit has held the abstention doctrine applies to a "run-of-the-mill diversity action," this Court should decline Plaintiffs' invitation to stay based on *Universal Gypsum*.[3]

**B.   This Case Does Not Present Any Exceptional Circumstances Warranting A Stay Under The *Colorado River* Doctrine**

Even where no grounds for abstention exist, there are principles unrelated to considerations of proper constitutional adjudication and comity under which a district court may, in exceptional circumstances, decline to exercise jurisdiction; "[t]hese principles rest on considerations of '[wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817. Under what is commonly known as the *Colorado River* doctrine, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention."[4] *Id.* at 818. Moreover, in considering a stay, a district court's discretion must be exercised within the "exceptional circumstances" limits of the *Colorado River* doctrine.[5] *Holder v. Holder*, 305 F.3d 854, 863 (9th Cir. 2002).

Under *Colorado River*, a number of factors may be relevant in determining whether to grant a stay including: (1) whether either court has assumed jurisdiction over a *res*; (2) the

---

[3] *See Schneider National Carriers, Inc. v. Carr*, 903 F.2d 1154, 1158 (7th Cir.1990)("we are not free to treat the diversity litigant as a second-class litigant, and we would be doing just that if we allowed a weaker showing of judicial economy to justify abstention in a diversity case than in a federal question case")(citation omitted).

[4] Although *Colorado River* is commonly referred to as an abstention doctrine, the Supreme Court has flatly rejected this categorization. *Nakash v. Marciano*, 882 F.2d 1411, 1415 n. 5 (9th Cir. 1989).

[5] "[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 28, 103 S.Ct. 927 (1983). *See also Privitera*, 926 F.2d at 895 (stay amounts to abstention because it surrenders federal jurisdiction for an indefinite period to defer to a state court's judgment).

relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; and (6) whether the state proceeding is adequate to protect the parties' rights.[6] *Nakash*, 882 F.2d at 1415. The relevant factors are to be applied in a pragmatic and flexible way, as part of a balancing process, not as a mechanical checklist, with the balance heavily weighted in favor of an exercise of jurisdiction. *Moses Cone*, 460 U.S. at 16; *Nakash*, 882 F.2d at 1415. The court's task is not to find some substantial reason for the exercise of federal jurisdiction, but to ascertain whether there exist "exceptional" circumstances and the "clearest of justifications" to justify the surrender of that jurisdiction. *Moses Cone*, 460 U.S. at 25-26.[7]

Some of the *Colorado River* factors are irrelevant to this case. There is no *res* in the control of either court and the forums are equally convenient.[8] In addition, though BNSF does not dispute that Washington courts would adequately protect the parties' rights, this factor does not weigh in favor of a stay. *Travelers*, 914 F.2d at 1370 (the Ninth Circuit has not applied this factor against the exercise of federal jurisdiction, only in favor of it when a state court may not be adequate to protect federal rights); *Spring City Corp. v. American Buildings Co.*, 193 F.3d 165, 172 (3rd Cir. 1999) (when state court is adequate this factor carries little weight).

As discussed below, the remaining factors under the *Colorado River* doctrine foreclose or weigh heavily against issuance of the stay requested by Plaintiffs.

**1.     There Are No Special Concerns About Concurrent Litigation**

---

[6] This list of factors is not exclusive and others may be considered. *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990); *Nakash*, 882 F.2d at 1416.

[7] The *Colorado River* doctrine does not apply to actions under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, because district courts are given wider discretion to abstain from deciding declaratory judgments than they are under the *Colorado River* doctrine. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87, 115 S.Ct. 2137 (1995). In support of their motion, Plaintiffs cite numerous federal declaratory judgment actions that were dismissed or stayed due to pending state court litigation. *See e.g. Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173 (1942); *Glenmont Hill Assoc. v. Montgomery County*, 291 F.Supp.2d 394 (D.Md. 2003); *Safeco Ins. Co. of America v. Miller*, 591 F.Supp. 590 (D.Md. 1984); *Greer v. Scearce* 53 F.Supp. 807 (W.D.Mo. 1944). These cases are irrelevant to the issues before the Court.

[8] *Butler v. U.S. District Court*, 116 F.2d 1013 (9th Cir. 1941), cited by Plaintiffs as supporting a stay, involved actions that were *in rem* or quasi *in rem* to quiet title to underground mining rights. *See also Easter*, 202 F.Supp.2d at 1154 (granting stay under *Burford* abstention and *Colorado River* doctrine where state court had jurisdiction over the disputed *res* and state had strong interest in bank's orderly liquidation).

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction….'" *Colorado River*, 424 U.S. at 817 (citations omitted).  Thus, a stay under the *Colorado River* doctrine must be grounded on more than just the interest in avoiding duplicative litigation; the "correct evaluation of this factor involves considering whether exceptional circumstances exist which justify special concern about piecemeal litigation." *Travelers*, 914 F.2d at 1369.  *See Spring City*, 193 F.3d at 172 (stay is appropriate only when there is a strong federal policy against "piecemeal litigation").  For example, in *Colorado River*, the Supreme Court found a stay was warranted by a clear federal policy, evinced by legislation, to avoid piecemeal adjudication of water rights in a river system.  424 U.S. at 819.

Here, there is no federal policy, or other exceptional circumstances, justifying special concern about concurrent federal and state proceedings to resolve MTCA claims.[9]  On the other hand, this case presents a "significant countervailing consideration" – the existence of a substantial doubt as to whether the state proceedings will resolve the federal action – that precludes the granting of a stay.  *Holder*, 305 F.3d at 868 (district court abused its discretion in staying action because there was a substantial doubt that the state court proceeding would resolve all issues in the federal action); *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993) (same).[10]

There is a substantial doubt, on two independent grounds, as to whether the state court proceedings will resolve all of the issues raised in this case.  First, the possibility that the state court will even be called upon to address such issues is entirely dependent on whether Plaintiffs prevail in their appeal of the state court action.  *See, Intel*, 12 F.3d at 913 (contingencies as to

---

[9] *See Schneider*, 903 F.2d at 1157-58 (that federal action is a diversity suit is not enough to tip a balance heavily weighed in favor of the exercise of federal jurisdiction).

[10] As the Supreme Court has stated:
> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.  If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismiss at all.…Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.

*Moses Cone*, 460 U.S. at 28; *Intel*, 12 F.3d at 913.

whether concurrent state court proceedings would resolve the issues in the federal action raise a substantial doubt sufficient to preclude a stay under *Colorado River*).[11]

Second, in the unlikely event the state court judgment is reversed on appeal, Plaintiffs are not entitled to dismiss their claims in this action unilaterally, and in considering any future motion to dismiss by Plaintiffs, this Court would need to consider whether the Defendants would suffer legal prejudice as a result of the dismissal. Fed.R.Civ.P. 41 (a)(2); *Westlands Water District v. United States*, 100 F.3d 94, 96 (9th Cir. 1996). Moreover, even if this Court were to dismiss Plaintiffs' claims, it nevertheless would be required to adjudicate Defendants' counterclaims, including those under CERCLA over which this Court has exclusive jurisdiction. 42 U.S.C. § 9613(f). *See* Fed.R.Civ.P. 41 (a)(2) ("If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court.").[12]

The Ninth Circuit has held that if there is a substantial doubt as to whether the state court proceedings will resolve all of the issues raised a federal action, the federal court should not grant a stay and it is unnecessary to weigh the other factors included in the *Colorado River* analysis. *Holder*, 305 F.3d at 870; *Intel*, 12 F.3d at 913. Nevertheless, BNSF will address the remaining *Colorado River* factors, but before doing so would note that Plaintiffs' argument that judicial economy favors a stay grossly overstates the potential for duplicative litigation.

First, though substantial discovery was conducted in the Superior Court Action prior to the summary judgment ruling, the parties have agreed that such discovery fulfills, in part, the

---

[11] Plaintiffs cite *Hennessy v. Tacoma Smelting & Refining Co.*, 129 F. 40 (9th Cir. 1904), for the proposition that it is appropriate to stay this action as long as the *possibility* exists that they will prevail on their state court appeal. In *Hennessy*, the trial court had ruled that a state court judgment operated as an adjudication of any matters involved in the federal case, but the Washington Supreme Court subsequently reversed the state court judgment, destroying its efficacy as an estoppel. *Id.* at 44. Because the state action had been reinstated, the Ninth Circuit reversed the trial court's decision and, without citing any authority, instructed the lower court to await final disposition of the state action. Significantly, unlike the stay requested here, the Ninth Circuit did not prospectively stay the federal action pending the uncertain result of a state court appeal.

[12] Though Plaintiffs now express concern about proceeding concurrently in federal and state court, they could have avoided this result by voluntarily dismissing this action in July 2004,shortly after it was removed to this Court and before Defendants filed their counterclaims. Instead, Plaintiffs chose to wait approximately ten months, until their state appeal was scheduled for oral argument, before filing their stay motion.

parties' Initial Disclosure obligations. Combined Joint Status Report and Discovery Plan at 4-5. The pretrial preparation that occurred in the Superior Court Action is equally applicable to this case and the parties will not engage in duplicative discovery. Second, while there may be some common factual and legal issues in this case and the Superior Court Action, the two cases also present many distinct issues.[13] Finally, to the extent the two cases raise similar or identical issues, those issues will not be litigated twice. Rather, the effect of resolution of any particular issue in one proceeding will be determined in the other by application of the principles of res judicata or collateral estoppel.[14] *Kline v. Burk Constr. Co.*, 260 U.S. 226, 230, 43 S.Ct. 79 (1922); *Spring City*, 193 F.3d at 172.

### 2. This Case Has Progressed Farther Than The Superior Court Action

The "priority" element of the *Colorado River* doctrine (*i.e.*, the order in which the forums obtained jurisdiction) is not to be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions. *Moses Cone*, 460 U.S. at 21. The mere existence of a case on the state court docket in no way causes a substantial waste of judicial resources nor imposes a burden which would justify a stay. *Travelers*, 914 F.2d at 1370.

Although the Superior Court Action was filed in 2002, it has now been dismissed in its entirety as a result of the judgments entered in favor of BNSF and Baxter and Plaintiffs' settlement with the State. Moreover, while Plaintiffs have requested a stay pending a decision by the Washington Court of Appeals, regardless of that court's decision, a subsequent appeal to the Washington Supreme Court is certainly possible. Thus, contrary to Plaintiffs' assertions, there is no likelihood of a prompt determination in the Superior Court Action. In any event, the Superior

---

[13] Plaintiffs' claims to the contrary, EPA's Record of Decision makes clear that the source of contamination to the marine sediments was not subsurface contamination at the Plant, but rather surface releases of contaminants to the offshore environment. Zeppetello Dec. at 11. Thus, while a major focus of the Superior Court Action would be daily operations at the Plant, including spills, leaks and the handling of treated wood products, this case will focus in large part on PSR's criminal misconduct in discharging hazardous wastes into the marine environment, either directly from the Plant or via the City sewer system. *See* BNSF's Motion for Summary Judgment at 4-5. Similarly, elements of both Plaintiffs alleged costs are different with respect to remedial actions conducted at the Plant and in the marine sediments.

[14] In any event, the mere potential for conflict in the results of adjudications does not warrant staying the exercise of federal jurisdiction. *Colorado River*, 424 U.S. at 816.

Court dismissed Plaintiffs' claims against BNSF and Baxter as barred by the applicable statutes of limitations and never considered or resolved any of the factual or legal issues related to the merits. Therefore, even if Plaintiffs ultimately are successful on their appeal, the Superior Court would be required to begin consideration Plaintiffs' claims anew, probably following the filing of amended pleadings.

In contrast, this case has been pending in this Court for approximately ten months. Last December, the Court issued a scheduling order setting a trial date of May 1, 2006. BNSF has pursued discovery from Plaintiffs based on that trial date, and has filed a pending summary judgment motion seeking dismissal of all claims asserted by the Port. Given the current trial date, and the contingencies associated with Plaintiffs' appeal, this case may well be resolved prior to the conclusion of the state court appellate proceedings.[15]

### 3. The Presence Of Federal-Law Issues In This Case Precludes A Stay

Plaintiffs' complaint alleges only state law causes of action. However, a stay under the *Colorado River* doctrine cannot be justified merely because a case arises entirely under state law. *Spring City*, 193 F.3d at 172. Moreover, the Defendants have asserted counterclaims under federal law, which are within the exclusive jurisdiction of this Court, and Plaintiffs' MTCA claims raise, and will require determination of, issues of federal law. The presence of federal issues precludes, or at a minimum is a major consideration weighing against, a stay. *Moses Cone*, 460 U.S. at 26; *Intel*, 12 F.3d at 913.

In addition to the Defendants' CERCLA counterclaims, this case raises issues of federal law because EPA has investigated and remediated the PSR Superfund Site, including the marine sediments, under the authority of the CERCLA. 42 U.S.C. §§ 9601-9675. Similarly, because

---

[15] In addition to the progress that has been made in this case, this Court, unlike the Superior Court, has a considerable history with Plaintiff PSR, which is the successor by name change to the Wyckoff Company. In the mid-1980's, the United States brought criminal charges against the Wyckoff Company, its President, and three employees, all of which pled guilty to violations of federal environmental laws at the Plant. *United States v. The Wyckoff Company, Inc., et al.*, W.D. Wash. Case No. CR84-167V (*see* BNSF's Motion for Summary Judgment at 4-5). This Court also entered the PSR Consent Decree which resolved PSR's environmental liabilities to the United States. *United States, et al. v. Pacific Sound Resources, Inc., et al.*, W.D. Wash. Case No. C94-687 (*see* BNSF's Motion for Summary Judgment at 8-9). *See also Wyckoff Company v. EPA*, 796 F.2d 1197 (9th Cir. 1986) (affirming this Court's denial of a preliminary injunction requested by the Wyckoff Company in challenging EPA's authority to issue administrative orders requiring the company to implement response actions).

MTCA was heavily patterned on CERCLA, federal cases interpreting similar language in CERCLA are persuasive authority when interpreting MTCA. *Bird-Johnson Corp. v. Dana Corp.*, 119 Wash.2d 423, 427 (1992).

A consideration related to the federal law issues noted above is that Plaintiffs' claims for the damages they allegedly incurred in the marine sediments involve implementation of PSR's Consent Decree with the United States, the Suquamish Tribe, and the Muckleshoot Indian Tribe, which was entered by this Court in 1994. BNSF's pending summary judgment motion against the Port raises the issue of whether the Port is seeking an impermissible double recovery because it has been reimbursed for all costs incurred in the marine sediments from settlement funds administered by the PSR Environmental Trust pursuant to that Decree. Issues regarding implementation of the Decree, including issues associated with PSR's alleged damages, should be resolved by this Court.[16]

In "some rare circumstances" the presence of state-law issues may weigh in favor of a stay under the *Colorado River* doctrine. *Moses Cone*, 460 U.S. at 26. However, the fact that Plaintiffs' Complaint raises only state-law issues is not significant here since this Court's jurisdiction to apply MTCA is concurrent with that of the Washington courts. *See Id.* at 25; *Travelers*, 914 F.2d at 1370 (where case involves routine issues of state law, which the district court is fully capable of deciding, there are no rare circumstances justifying a stay).[17] In

---

[16] BNSF intends to discuss the relationship between PSR's alleged damages and the PSR Consent Decree more fully in a subsequent summary judgment motion. In brief, and among other issues, the Decree, and the Liquidation Plan and Memorandum of Agreement (among the plaintiffs in that case) which are attached to the Decree, each provide that one-half of the proceeds from the liquidation of PSR's assets are to be paid into the United States Hazardous Substance Superfund Trust and the other one-half are to be deposited into the registry of this Court. *See* BNSF's Motion for Summary Judgment at 9 n.8. Both the Decree and the Memorandum of Agreement indicate that the one-half of the proceeds paid into the registry of the Court are to be used for purposes of natural resource restoration. Notwithstanding the express requirements of the Decree, Liquidation Plan, and Memorandum of Agreement, according to the Financial Management Unit of the Clerk's Office, no funds have ever been deposited into the Court's registry as required by the Decree. Zeppetello Dec. at 2 (¶4). This information raises questions about whether: (1) PSR has violated the Decree requirements applicable to distribution of one-half of the proceeds from the liquidation of PSR's assets; and (2) PSR is improperly claiming as damages in this case costs incurred for natural resource restoration.

[17] Although this case may present issues of first impression under MTCA, this Court is also capable of resolving such issues. *See, e.g., Louisiana Pacific Corp. v. ASARCO Inc.*, 24 F.3d 1565, 1582-83 (9th Cir. 1994) (appeal from decision of this Court which held that, as originally enacted, MTCA did not create a private cause of action); *Union Station Associates, LLC. v. Puget Sound Energy, Inc.*, 238 F.Supp.2d 1218, 1225-26 (W.D. Wash. 2002) (MTCA contribution provision requires consideration of equitable factors and does not provide for full cost recovery).

contrast, the presence of federal law issues, including proper administration of this Court's Consent Decree, is a major considering precluding or at least weighing heavily against a stay. *Moses Cone*, 460 U.S. at 26; *Intel*, 12 F.3d at 913.

### III.   CONCLUSION

For all these reasons, BNSF respectfully requests that this Court deny Plaintiffs' motion for a stay.

DATED this 9th day of May, 2005.                Respectfully submitted,

BULLIVANT HOUSER BAILEY PC

/s/ Thomas D. Adams
Thomas D. Adams
WSBA #18470
E-mail: tom.adams@bullivant.com
Attorneys for Defendant, The Burlington Northern and Santa Fe Railway Company
BULLIVANT HOUSER BAILEY PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington  98101-1618
Telephone: 206.292.8930
Facsimile: 206.386.5130

BARG COFFIN LEWIS & TRAPP

/s/ Marc A. Zeppetello
John F. Barg, *Pro Hac Vice*
Marc A. Zeppetello, *Pro Hac Vice*
E-mail: maz@bcltlaw.com
Attorneys for Defendant, The Burlington Northern and Santa Fe Railway Company
BARG COFFIN LEWIS & TRAPP, LLP
One Market – Steuart Tower, Suite 2700
San Francisco, CA  94105
Telephone: 415.228.5409
Facsimile: 415.228.5450

**CERTIFICATE OF SERVICE**

I hereby certify that on Monday, May 09, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the persons listed below:

Gillis E. Reavis
Foster Pepper & Shefelman PLLC
1111 Third Avenue, Ste 3400
Seattle, WA 98101
Phone: (206) 447-7295
Fax: (206) 749-2160
*Counsel for Plaintiff Pacific Sound/Port of Seattle*

Rodney L. Brown Jr.
Stephen J. Tan
David D. Dicks
Cascadia Law Group PLLC
1201 Third Ave., Ste. 320
Seattle, WA 98101
Phone: (206) 292-6300
Fax: (206) 292-6301
*Associated Counsel for Plaintiff Pacific Sound/Port of Seattle*

James C. Hanken
3210 Wells Fargo Center
999 Third Ave.
Seattle, WA 98104
Phone: (206) 235-7679
Fax: (206) 689-7999
*Counsel for Defendant JH Baxter & Co., and JH Baxter & Co., Inc.*

John F. Barg, *Pro Hac Vice*
Marc A. Zeppetello, *Pro Hac Vice*
Barg Coffin Lewis & Trapp, LLP
One Market Steuart Tower, Ste 2700
San Francisco, CA 94105-1475
Phone: (415) 228-5400
Fax:   (415) 228-5450
*Pro Hac Vice Counsel for Defendants The Burlington Northern and Santa Fe Railway Company*

BULLIVANT HOUSER BAILEY PC


By: /s/Elen A. Sale
     Elen A. Sale
     ele.sale@bullivant.com

THE BNSF RAILWAY CO.'S OPPOSITION TO PLAINTIFFS' MOTION FOR STAY

338844.1