1

2

3

4

5

6

The Honorable Robert S. Lasnik

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

PACIFIC SOUND RESOURCES, a
Washington non-profit corporation; and THE
PORT OF SEATTLE, a Washington municipal
corporation,

                                    Plaintiffs,

        v.

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY, a
Delaware corporation; J.H. BAXTER & CO., a
California limited partnership; J.H. BAXTER &
CO., a California corporation; and J.H.
BAXTER & CO., INC., a California
corporation,

                                    Defendants.

No. C04-1654L

PLAINTIFFS' RESPONSE TO BNSF'S
MOTION FOR SUMMARY JUDGMENT
REGARDING REMEDIAL ACTION
COSTS UNDER MTCA, STANDING,
AND COMMON LAW CLAIMS

**NOTED ON MOTION CALENDAR:
October 21, 2005**

**ORAL ARGUMENT REQUESTED**

19

## I.    INTRODUCTION

20

        BNSF's motion for summary judgment should be denied as a matter of law because

21

plaintiff Pacific Sound Resources (PSR) has a viable claim for contribution under the Model

22

Toxics Control Act (MTCA), RCW 70.105D.080 based on its payments to the U.S.

23

Environmental Protection Agency (EPA) for remedial action implemented by EPA.

24

        BNSF's argument is premised on the theory that MTCA limits contribution claims to

25

those costs "actually incurred by a party."  The statute contains no such requirement, however,

26

and instead creates a right to contribution "for the recovery of remedial action costs" paid by a

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 1
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON  98101-3299
PHONE (206) 447-4400   FAX (206)-447-7900

1    party regardless of who actually "performed" the work.  BNSF's position would subvert

2    MTCA's policy of encouraging settlements and cooperation between private parties and the

3    Washington Department of Ecology (Ecology).  Denying contribution rights to individual parties

4    who are asked to reimburse Ecology for its cleanup costs would make those parties unwilling to

5    settle unless litigation were brought against all responsible parties.

6          BNSF's standing arguments are incorrect as a matter of law since PSR has a real injury

7    and the relief sought in this case will address that injury.  Although PSR was only one of several

8    operators of the site, and one of even many more potentially responsible parties, it agreed to

9    liquidate all of its assets and provide the proceeds to EPA to cleanup the environment.  PSR's

10   injury, therefore, is based on the fact that it has paid more than its fair share of the liability at the

11   site.  It is entitled to a judgment awarding it contribution from other responsible parties, which

12   will redress the injury.  It is irrelevant whether PSR ultimately gets to keep the money or whether

13   it pays the money to EPA in satisfaction of an earlier obligation.  Moreover, BNSF's position on

14   standing would frustrate the intent of this Court.  Judge Rothstein approved the 1994 Consent

15   Decree, which specifically authorized PSR to pursue claims against other responsible parties

16   even though the recoveries would ultimately pass to EPA.

17         BNSF's arguments regarding PSR's common law claims also fail as a matter of law.

18   Under Washington law, nuisance is a statutory claim, and the types of claims allowed under the

19   statute do not require interference with a possessory interest.  PSR's nuisance claims are not

20   barred by the statute of limitations since they constitute continuing torts.  The statute of

21   limitations in Washington does not bar claims for continuing torts as long as the contamination is

22   still present, which is undisputed in this case.

## II.    STATEMENT OF UNDISPUTED FACTS

24         BNSF's statement of facts is largely accurate as far as it goes.  As BNSF acknowledges,

25   PSR (formerly known as the Wyckoff Company) solely owned and operated the West Seattle

26   plant from 1965 until 1994, a period of 29 years.  *See* BNSF Motion for Summary Judgment that

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 2
Case No. C04-1654L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206)-447-7900

50590062.1

1    Plaintiff Pacific Sound Resources Has Incurred No Remedial Action Costs Under MTCA and

2    Lacks Standing to Seek Contribution or Damages, and that PSR's Common Law Claims are

3    Time Barred (BNSF Motion) at 4.  The plant operated from approximately 1912 until 1994, a

4    period of 82 years.  *Id.*  Therefore, PSR was the sole owner and operator of the Site for 35% of

5    the years during which the plant operated.

6         BNSF and its predecessors, the Northern Pacific Railway Co. and the Great Northern

7    Railway,[1] had a much lengthier period of connection to the wood treating operations.  The first

8    documented agreement between BNSF and its predecessors was signed in 1926.  Declaration of

9    Gillis E. Reavis in Support of Response to BNSF's Motion for Summary Judgment Regarding

10   MTCA Remedial Action Costs (Reavis Dec.) at 12 (1926 Treating contract).  BNSF operations

11   continued through at least 1984.  Reavis Dec. at 33 (Burlington Northern correspondence).

12        The 1926 agreement was between the Northern Pacific Railway Co. and the The J.M.

13   Colman Co., which was then the operator of the treating plant.  Reavis Dec. at 12.  It stated that

14   The J.M. Colman Co. "will at its own cost and expense erect and equip a plant and storage yard

15   for seasoning, boring, adzing, incising and treating cross ties and treating other material with

16   creosote or a mixture of petroleum and creosote in accordance with specifications in Exhibit 'A'

17   attached and made part of this contract."  *Id.*  Under the contract, Northern Pacific furnished the

18   ties, timber and other lumber to be treated.  *Id.* at 13.  It furnished rail cars for transporting raw

19   materials to the site and treated materials from the site.  *Id.* at 14.  It furnished all of the creosote

20   and petroleum required to treat its lumber in rail cars or by vessel.  *Id.* at 16.  Northern Pacific

---

[1] The company now known as The Burlington Northern and Santa Fe Railway Company was originally incorporated in 1961 under the name of Great Northern Pacific and Burlington Lines, Inc.  On March 20, 1970, Great Northern Railway Company and Northern Pacific Railway Company were merged into Great Northern Pacific and Burlington Lines, Inc.  On the same day, the name was changed to Burlington Northern Inc., then later to Burlington Northern Railroad Company, which became a wholly-owned subsidiary of Burlington Northern Inc.  On December 31, 1996, The Atchison, Topeka and Santa Fe Railway Company was merged into and with Burlington Northern Railroad Company under the name of The Burlington Northern and Santa Fe Railway Company, which is a defendant in this case.  Reavis Dec. at 4 (BNSF answers to interrogatories in *Pacific Sound Resources and the Port of Seattle v. The Burlington Northern and Santa Fe Railway Company, et al.,* No. 02-2-27778-1SEA in the King County Superior Court).

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 3
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
**1111 THIRD AVENUE, SUITE 3400**
**SEATTLE, WASHINGTON 98101-3299**
**PHONE (206) 447-4400   FAX (206) 447-7900**

50590062.1

1   agreed to "carry the insurance and pay the taxes on creosote and oil stored for it by the

2   Creosoting Company [J.M. Colman]." *Id.* The 1926 contract attached detailed specifications for

3   its products, which controlled not only the finished product but the method by which the treating

4   process was conducted and the details of that process. *Id.* at 12.

5       Similar contracts were signed in 1937, 1944 and 1946. *Id.* at 37, 47 and 55. They

6   established the relationship between BNSF and the various treating companies over the years

7   until Burlington Northern ceased doing business with the Wyckoff Company. PSR contends that

8   these facts establish BNSF's liability under MTCA, RCW 70.105D.040. BNSF and its

9   predecessors had a close working relationship with the treating companies for at least 58 years,

10  or 71% of the time that the plant was operating, so at trial the Court will be asked to determine

11  what equitable share of liability should be attributed to BNSF. RCW 70.105D.080. PSR's claim

12  in this case seeks contribution in the amount of BNSF's equitable share.

### III.   ARGUMENT AND AUTHORITIES

#### A.   Summary Judgment Standard

15      As the moving party, BNSF bears a heavy summary judgment burden. It must negate, as

16  a matter of law, the existence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477

17  U.S. 317, 323 (1986). In considering the evidence to decide whether material issues of fact exist,

18  the court must "draw all inferences in the non-movant's favor." *Clicks Billiards, Inc. v.*

19  *Sixshooters, Inc.,* 251 F.3d 1252, 1257 (9th Cir. 2001). BNSF has failed to meet this burden.

#### B.   PSR's Contribution Claim Is For Remedial Action Costs Under MTCA

21      BNSF'S entire argument rests on a false premise, that "remedial action costs" are only

22  those expenditures made directly to a remedial action contractor. This is not the law. Under

23  MTCA, remedial action occurs when expenditures are made to address threats posed by

24  hazardous substances. It makes no difference whether the expenditures are made to purchase

25  cleanup-related goods and services directly, or whether they are made to another entity who then

26

---

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 4
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-7900

50590062.1

1   purchases goods and services.  Either way, the expenditures are remedial actions that may be

2   recovered in a contribution action under RCW 70.105D.080.

3           Like most potentially liable persons, PSR has not personally collected samples or

4   installed containment systems to address threats posed by hazardous substances at the Site.

5   However, it has made expenditures totaling $11,551,460.64 to address these threats.  Declaration

6   of Diana Norton at ¶ 4; Declaration of Anthony Burgess.  PSR paid this money to the PSR Trust,

7   which transmitted the money to EPA pursuant to the 1994 Consent Decree.  In turn, EPA hired

8   contractors to take actions to minimize the threat from hazardous substances at the PSR Site.  *Id.*

9   That PSR's money passed through the hands of the Trust and EPA before it reached the

10  contractors is irrelevant for purposes of this lawsuit.

11          According to BNSF, because PSR "has not performed any work itself," it "has not

12  incurred any remedial action costs within the meaning of RCW 70.105D.020(21) and

13  70.105D.080 for which it is entitled to contribution."  BNSF Motion at 13-14.  BNSF does not

14  cite any authority for this assertion, nor could it.  As explained below, BNSF's argument is

15  contrary to the plain language of MTCA, the regulations that implement the statute, and the

16  policy that underlies it.

17      **1.    MTCA Allows Recovery of All Expenditures Made for Remedial Action,
                Regardless of Who Performs the Work.**

18          The limitation that BNSF argues for – that only the costs of work performed personally

19  by the plaintiff are recoverable in a MTCA contribution action – simply does not exist in MTCA.

20  The statute authorizing a "private right of action" provides, in its entirety, as follows:

21          Except as provided in RCW 70.105D.040(4) (d) and (f), a person may bring a
            private right of action, including a claim for contribution or for declaratory relief,
22          against any other person liable under RCW 70.105D.040 for the recovery of
            remedial action costs. In the action, natural resource damages paid to the state
23          under this chapter may also be recovered. Recovery shall be based on such
            equitable factors as the court determines are appropriate. Remedial action costs
24          shall include reasonable attorneys' fees and expenses. Recovery of remedial action
            costs shall be limited to those remedial actions that, when evaluated as a whole,
25          are the substantial equivalent of a department-conducted or department-
            supervised remedial action. Substantial equivalence shall be determined by the

26

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 5
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
**1111 THIRD AVENUE, SUITE 3400**
**SEATTLE, WASHINGTON 98101-3299**
**PHONE (206) 447-4400   FAX (206)-447-7900**

50590062.1

> court with reference to the rules adopted by the department under this chapter. An action under this section may be brought after remedial action costs are incurred but must be brought within three years from the date remedial action confirms cleanup standards are met or within one year of May 12, 1993, whichever is later. The prevailing party in such an action shall recover its reasonable attorneys' fees and costs. This section applies to all causes of action regardless of when the cause of action may have arisen. To the extent a cause of action has arisen prior to May 12, 1993, this section applies retroactively, but in all other respects it applies prospectively.

RCW 70.105D.080. Nothing in this section specifies *who* must conduct the cleanup for the costs to be recoverable. In fact, the statute appears to have been carefully drafted to avoid identifying an actor. A private right of action is "for the recovery of remedial action costs," without regard to whether the party performing the work was the liable person, a government agency, or a contractor hired by either of them.

Several provisions of RCW 70.105D.080 reinforce this reading. First, the legislature's use of the phrase "a claim for contribution" in RCW 70.105D.080 makes clear that parties who have not themselves performed work may bring contribution actions. The legislature is presumed to know the legal definition of terms such as "contribution." *Rasor v. Retail Credit Co.*, 87 Wn.2d 516, 530, 554 P.2d 1041 (1976) (familiar legal term used in a statute is given its familiar legal meaning). Washington courts have defined contribution as "the right of one who has paid a common liability to recover a portion of the payment from another tortfeasor who shares in that common liability." *Kottler v. State*, 136 Wn.2d 437, 963 P.2d 834 (1998), *citing Black's Law Dictionary* 328 (6th ed.1990).

When it created the right of contribution in MTCA, the legislature understood that one of many liable parties could end up paying for an entire cleanup himself. This is clear from the legislature's reference in RCW 70.105D.080 to allocating remedial action costs based on "equitable factors," since it is only where multiple parties are liable that equitable allocation of liability would be necessary. By authorizing claims for "contribution" in this section, the legislature intended to allow a party who did not perform cleanup, but who paid more than its fair share of "a common liability," to pursue others who had not yet paid.

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER MTCA, STANDING, AND COMMON LAW CLAIMS - 6
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206)-447-7900

50590062.1

PSR's claim is based on the same well-known common law principle that was adopted in MTCA. PSR has paid more than its fair share and now brings a claim for contribution against BNSF. Absent explicit statutory language rejecting the normal definition of contribution – and there is none – MTCA authorizes claims by persons who paid remedial action costs to another but did not themselves "perform" the work.

Second, MTCA's definition of "remedial action" demonstrates that the legislature did not intend to limit contribution claims as BNSF contends. The three-word phrase "remedial action costs" is not defined, either in the statute or in Ecology's regulations. However, MTCA defines "remedial action" as:

> any action *or expenditure* consistent with the purposes of this chapter to identify, eliminate, or minimize any threat posed by hazardous substances to human health or the environment including any investigative and monitoring activities with respect to any release or threatened release of a hazardous substance and any health assessments or health effects studies conducted in order to determine the risk or potential risk to human health.

RCW 70.105D.020(21) (emphasis added). Like the statutory provision defining the private right action itself, the definition of "remedial action" is silent with respect to *who* must perform the work. The focus is on the action, not the actor.

Under this definition, an expenditure that is consistent with the purposes of MTCA is itself a "remedial action." A person takes remedial action under MTCA either by acting to identify, eliminate, or minimize any threat posed by hazardous substances, *or* by making expenditures for these purposes. In other words, it is not necessary that a plaintiff in a MTCA contribution action personally act to address hazardous substance threats by collecting data, writing reports, or removing contaminants. Instead, he can disburse money to others to pay for these goods and services. Under RCW 70.105D.080, the plaintiff has a private right of action for any expenditures made to address such threats.

This includes expenditures to government agencies, such as Ecology and EPA. MTCA authorizes Ecology to clean up contaminated sites on its own. RCW 70.105D.030(1)(b)

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER MTCA, STANDING, AND COMMON LAW CLAIMS - 7
Case No. C04-1654L

50590062.1

**FOSTER PEPPER & SHEFELMAN PLLC**
**1111 THIRD AVENUE, SUITE 3400**
**SEATTLE, WASHINGTON 98101-3299**
**PHONE (206) 447-4400   FAX (206) 447-7900**

1   (Ecology may "[c]onduct, provide for conducting, or require potentially liable persons to conduct

2   remedial actions").  If Ecology conducts a cleanup, it may direct the Attorney General to

3   "recover all costs and damages from persons liable therefore."  RCW 70.105D.040(2).

4   Furthermore, because liability under MTCA is joint and several, Ecology may recover its

5   remedial action costs from one of many liable persons.  RCW 70.105D.040(2).

6     Finally, the legislature obviously contemplated that persons who had reimbursed

7   Ecology's remedial action costs would, in turn, seek to recover their expenditures from other

8   liable persons using MTCA's private right of action.  When it drafted RCW 70.105D.080, the

9   legislature limited the remedial action costs recoverable to "those remedial actions that, when

10  evaluated as a whole, are the substantial equivalent of a *department-conducted* or department-

11  supervised remedial action." (Emphasis added).  Thus, cleanups performed by Ecology are the

12  benchmark against which all other cleanups are judged in a private right of action.  Costs of

13  remedial action that Ecology carries out are therefore among the remedial action costs that may

14  be recovered in a private right of action under RCW 70.105D.080.

15    Ecology shares this interpretation of the statute.  At the legislature's direction, Ecology

16  drafted rules to implement the requirement of RCW 70.105D.080 that cleanups for which

17  contribution is sought must be the "substantial equivalent" of an Ecology-conducted or Ecology-

18  supervised cleanup.  Its rule states in part that:

19     [T]he department considers the following remedial actions to be the substantial
20     equivalent of a department-conducted or department-supervised remedial action.

21     (a)  A remedial action conducted by the department.

22  WAC 173-340-545(2)(a).  As this provision demonstrates, Ecology interprets RCW 70.105D.080

23  to allow private parties to pursue contribution claims based on remedial actions conducted by

24  Ecology.  This interpretation, made by the agency responsible for implementing MTCA, is

25  entitled to "great weight."  *Port of Seattle v. Pollution Control Hearings Board*, 151 Wn.2d 568,

26  594, 90 P.3d 659 (2004).

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 8
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206)-447-7900

50590062.1

1

       **2.**     **BNSF's Argument Would Frustrate the Policies Behind MTCA.**

2

       BNSF's argument disallowing contribution claims for money paid to government

3

agencies (or other private parties) for cleanup would frustrate the basic policies behind MTCA.

4

Some of those policies are described in RCW 70.105D.010:

5

     (2)     The main purpose of chapter 2, Laws of 1989 [MTCA] is to raise
sufficient funds to clean up all hazardous waste sites and to prevent the creation of

6

future hazards due to improper disposal of toxic wastes into the state's land and
waters.

7

8

    ….

     (5)     Because it is often difficult or impossible to allocate responsibility among

9

persons liable for hazardous waste sites and because it is essential that sites be
cleaned up well and expeditiously, each responsible person should be liable

10

jointly and severally.

11

       MTCA recognizes that allocating responsibility among liable parties can be time-

12

consuming and costly.  The state's voters, who approved MTCA as an initiative, emphasized that

13

cleanups should not delayed.  For that reason, the voters made liability under MTCA joint and

14

several.  In addition, Ecology was given broad enforcement powers, including the power to issue

15

administrative orders.  Anyone who fails to comply "without sufficient cause" is subject to treble

16

damages and civil penalties up to $25,000 per day.  RCW 70.105D.050(1).  Because liability is

17

joint and several, these measures can be levied against one of many parties, leaving it up to that

18

party to bring claims against the others.

19

       BNSF's argument would place liable parties in an untenable position.  If they settle with

20

Ecology and pay for the cleanup Ecology has conducted (or will conduct), they would, under

21

BNSF's construction of the statute, be precluded from recovering from other parties the equitable

22

shares attributable to those parties.  If they do not settle, they are subject to treble damages and

23

penalties.  One likely consequence is that liable parties will not settle, but will force Ecology to

24

file a lawsuit against all liable parties, thereby frustrating MTCA's "essential" goal that sites be

25

cleaned up "expeditiously."

26

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 9
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON  98101-3299
PHONE (206) 447-4400   FAX (206)-447-7900

1    In short, MTCA is based on two complementary principles: joint and several liability,

2    coupled with a private right to contribution.  Given the goals of MTCA, it would be irrational to

3    draft a statute that allows contribution claims only when the liable parties write the checks to

4    cleanup contractors, not when Ecology writes the checks and the liable party pays Ecology back.

5    This Court has a duty to give a rational, sensible construction to statutes.  *Scannell v. City of*

6    *Seattle*, 29 Wn. App. 175, 627 P.2d 1000 (1981).  Interpreting MTCA in the manner requested

7    by BNSF would not be rational or sensible.

8    ### 3.    BNSF Offers No Valid Support for its Interpretation of RCW 70.105D.080.

9    BNSF's argument relies on a strained reading of *Bird-Johnson Corp. v. Dana Corp.*, 119

10   Wn.2d 423, 833 P.2d 375 (1992).  That case required the Washington Supreme Court to decide

11   whether MTCA authorized contribution actions.[2]  The Court compared MTCA, which at that

12   time had no express right of contribution, with CERCLA, which did include an express right.  It

13   concluded that MTCA's drafters had deliberately omitted contribution rights.

14   *Bird-Johnson* does not stand for the proposition that every difference between the texts of

15   MTCA and CERCLA must be read as a rejection of CERCLA's approach.  In fact, the

16   Washington Court of Appeals recently cautioned against construing MTCA in this way.  *See*

17   *Modern Sewer Corp. v. Nelson Distributing, Inc.*, 125 Wn. App. 564, 109 P.3d 11 (2005).

18   There, the parties disagreed about the meaning of "disposal," as that term is used in MTCA.  No

19   definition appears in MTCA, but one is given in CERCLA.  Defendant Nelson Distributing

20   argued that this difference "g[ave] rise to the inference that [the CERCLA definition was]

21   intentionally rejected," citing *Bird-Johnson*.

22   The Court agreed that the difference between the two statutes created an inference – but

23   only that MTCA's drafters "did not intend to incorporate the CERCLA/SARA definition" of

24   disposal.  To infer more than this was unwarranted:

25

26   [2]  After the Court's decision in *Bird-Johnson*, the legislature amended MTCA to add RCW 70.105D.080, the private right of action at issue in this motion.

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 10
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
**1111 THIRD AVENUE, SUITE 3400**
**SEATTLE, WASHINGTON  98101-3299**
**PHONE (206) 447-4400   FAX (206)-447-7900**

50590062.1

MTCA's lack of definition for the word "disposal" may be the result of a view that the ordinary definition was adequate--that the word needed no special definition as a term of art for purposes of the act.  Nelson Distributing overstates when it argues that the failure of MTCA to define "disposal" as it was defined in CERCLA requires us to conclude that the drafters of MTCA intended to reject completely CERCLA's definition of the term "disposal."  MTCA did not expressly reject every portion of CERCLA's definition. *Bird-Johnson* does not require us to adopt an ordinary meaning of the word "disposal" that necessarily excludes all of the elements of the CERCLA definition.

125 Wn. App. at 570.  Similarly, it would be wrong to conclude that remedial action costs paid to EPA cannot be recovered under MTCA simply because MTCA's contribution provision is written differently than CERCLA's contribution provision.  As explained above, any expenditures made to address threats posed by hazardous substances are "remedial action" costs.  Given the broad definition of "remedial action," there was no need for the legislature to specify that remedial action costs paid to the government could be recovered in a MTCA contribution claim.

BNSF also cites the United States Supreme Court's decision in *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 125 S. Ct. 577 (2004).  There, the Court construed a provision of CERCLA with no analog in MTCA.  To the extent *Aviall* has any relevance here, it undermines BNSF's argument.  In *Aviall*, the Court ruled that a contribution action under CERCLA could not proceed unless the government had first sued the plaintiff, since CERCLA authorizes contribution actions only "during or following any civil action" by the government.  In other words, the Court found that the plain language of the statute meant just what it said.  Here, it is BNSF that ignores the plain language of the statute, and asks the Court to read into MTCA a limitation that the drafters chose not to include.

**C.     PSR Has Standing to Pursue its Claims**

BNSF argues that PSR lacks standing under Article III of the Constitution.  It cites *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130 (1992), for the standing test.  According to BNSF, PSR's claims (a) fail to demonstrate an "injury in fact" and (b) cannot be redressed by a favorable decision in this case.  BNSF Motion at 18.

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER MTCA, STANDING, AND COMMON LAW CLAIMS - 11
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206)-447-7900

50590062.1

1   BNSF's "injury in fact" argument, however, concerns only statutory construction, not

2   constitutional standing - that is, whether PSR's injury is cognizable under the particular statute

3   being invoked, MTCA.  As discussed above, since MTCA allows private parties to recover

4   remedial action costs, BNSF's statutory argument fails.  Having paid EPA for those remedial

5   action costs, PSR has sustained an injury in fact under Constitutional principles.

6   BNSF's contentions on the redressability argument miss the point, since the injury to

7   PSR is that it has paid more than its fair share of the cleanup costs at the PSR Marine Sediments

8   Unit, and an order from this Court requiring BNSF to pay its share would redress that injury.

9   The Court should therefore reject BNSF's arguments and hold that PSR has standing to bring

10  this claim.

11      **1.      PSR Has Suffered an "Injury in Fact."**

12  Although BNSF characterizes its "injury in fact" claim as constitutional, its argument

13  implicates questions of statutory construction only, and not the Constitution. BNSF argues that

14  PSR has not suffered an injury, and therefore cannot invoke the jurisdiction of this Court,

15  because it has not incurred "costs for which it might be entitled to contribution under MTCA."

16  BNSF Motion at 18.  The terms of MTCA, however, do not define an injury in fact under

17  Constitutional principles.  Under the Constitution, PSR must only allege that it has suffered

18  "some direct injury," not a particular type of harm covered under a particular statute.  *City of Los*

19  *Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

20  As discussed above, BNSF is wrong that PSR has not incurred remedial action costs in

21  this case.  Cases decided under CERCLA, which was the model for MTCA, hold that while it is

22  necessary that a party "incur costs," it is not necessary for a private party actually to have *paid*

23  those costs as long as it has *incurred liability* for the costs.  *See Trimble v. Asarco, Inc.,* 232 F.3d

24  946, 958 (8th Cir. 2000), *overruled on other grounds, Exxon Mobil Corp. v. Allapattah Service,*

25  *Inc.,* __ U.S. __, 125 S.Ct. 2611 (2005).  Here, PSR not only incurred liability for the costs when

26  it entered into the 1994 Consent Decree, it has actually paid millions of dollars of those costs.

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 12
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
**1111 THIRD AVENUE, SUITE 3400**
**SEATTLE, WASHINGTON 98101-3299**
**PHONE (206) 447-4400   FAX (206)-447-7900**

50590062.1

1    The dollars that PSR provided to EPA for cleanup of the site constitute MTCA remedial action

2    costs.

3           They also constitute an injury in fact to PSR in the amount of at least $11,551,460.64.

4    PSR's injury is based on the expenditure of a large sum of money, in addition to having paid

5    more than its fair share of cleanup costs.  For standing purposes, PSR has alleged an injury in

6    fact.  *See Karras v. Teledyne Industries, Inc.,* 191 F. Supp. 1162, 1173 (trusts established to pay

7    cleanup costs and pursue claims on behalf of responsible parties had Constitutional standing

8    because they paid money to cleanup contractors and to the government).

9           **2.     PSR's Injury is Redressable by This Court.**

10          Similarly, PSR's injury will be redressed by an order from this Court awarding it

11   monetary damages in the amount of BNSF's equitable share and a declaratory judgment that

12   BNSF is liable for future costs.  The Court's judgment will directly redress the harm and does

13   not run afoul of Constitutional standing principles.

14          It is a prerequisite of justiciability that the relief requested will redress the claimed injury.

15   *Gonzolez v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982).  For instance, injuries are not

16   redressable when broad relief is requested in the hope that some benefit will trickle down to the

17   plaintiffs.  *See, e.g., Allen v. Wright*, 468 U.S. 737 (1984) (relief requested would not redress

18   injury because it was merely speculative that a change in IRS policy would lead to more

19   integrated schools); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976)

20   (relief requested would not redress injury because it was merely speculative that the plaintiffs

21   would be provided health care if the IRS changed its Revenue Ruling); and *Linda R.S. v. Richard*

22   *D.*, 410 U.S. 614 (1973) (relief requested would not redress injury because it was merely

23   speculative that a threat of prosecution would cause a child's father to pay child support).

24          Similarly, an injury may not be redressable when the court cannot formulate any

25   meaningful decree.  *Gorsuch*, 688 F.2d at 1267, *citing Greater Tampa Chamber of Commerce v.*

26   *Goldschmidt*, 627 F.2d 258, 263-64 (D.C. Cir. 1980) (invalidation of international executive

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 13
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
**1111 THIRD AVENUE, SUITE 3400**
**SEATTLE, WASHINGTON  98101-3299**
**PHONE (206) 447-4400   FAX (206)-447-7900**

50590062.1

1    agreement will not redress injury because act of foreign sovereign necessary for relief); *Boating*

2    *Indus. Ass'ns v. Marshall*, 601 F.2d 1376 (9th Cir. 1979) (rescission of administrative

3    interpretive notice would not redress injury because no guarantee existed that rescission would

4    later bind court).  Finally, an injury may not be redressable when the requested relief would

5    actually worsen the plaintiff's position. *Gorsuch*, 688 F.2d at 1267, *citing NAACP, Boston*

6    *Chapter v. Harris*, 607 F.2d 514, 520 (1st Cir. 1979) (challenge to block grant recipient's

7    eligibility, if successful, would mean that grant program's purposes would never be implemented

8    in plaintiff's city).

9           Contrary to BNSF's assertion, this case is completely unlike any of the Constitutional

10   standing cases, where a court lacks power to render a meaningful decree.  PSR's claim is directly

11   related to BNSF's actions.  BNSF is liable under MTCA because it "arranged for disposal" of

12   hazardous substances at the PSR site.  RCW 70.105D.040(1)(c).  PSR has dedicated all of its

13   corporate resources to clean up the environmental damage caused by wood treatment operations

14   during its tenure, and during the tenure of other operators of the plant.  But PSR is only one of

15   many liable parties, and therefore PSR has paid more than its equitable share of costs incurred to

16   date.

17          PSR seeks two different types of relief.  One is an award of monetary damages to

18   reimburse it for BNSF's equitable share of liability.  The second is a declaratory judgment for

19   costs that may be required in the future.  The Court can adequately address the monetary claim

20   by rendering judgment for monetary damages.  The Court can similarly redress the future

21   liability by rendering judgment that BNSF is liable for a certain percentage of future costs.

22   These remedies are not speculative, nor do they depend on a tenuous connection between the

23   remedy and the harm.  The Court's judgment itself will easily redress PSR's injury.

24          BNSF contends, without any authority, that PSR's injury will not be redressed since "a

25   favorable decision would not change PSR's liability to the United States (or the Native American

26   Tribes who are also parties to the Consent Decree) and would not void or eliminate PSR's

---

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 14
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-7900

50590062.1

1    obligations under the Decree." BNSF Motion at 19. If that were the legal test, many run-of-the-

2    mill cases would fail to establish standing. Bankruptcy trustees and receivers or liquidators of all

3    sorts would be unable to establish standing since they would frequently be unable to show that

4    the bankrupt entity on whose behalf they prosecute claims will ever return to solvency. Chapter

5    7 bankruptcy trustees routinely bring actions on behalf of companies that by definition will not

6    survive to personally enjoy the proceeds of the lawsuit. 7 U.S.C. § 323(b); *In re United Ins.*

7    *Management, Inc.,* 14 F.3d 1380, 1386 (9th Cir. 1994) (a Chapter 7 trustee must "investigate and

8    litigate potential lawsuits that might be brought on behalf of the debtor"). Like all actions taken

9    by a Chapter 7 trustee, an action under § 323(b) is brought in order to liquidate and distribute the

10   debtor company's assets for the benefit of creditors, not the bankrupt. *In re Conlye,* 159 B.R.

11   323, 325 (Bankr.D. Idaho 1993). BNSF's argument that PSR lacks standing does not withstand

12   even a cursory analysis.

13        The two cases BNSF cites to support its redressability argument dealt with statutory

14   issues - whether plaintiffs in environmental cases had alleged the types of harm that were

15   addressed by the pertinent statutes - not whether their harms were beyond the scope of the

16   Court's power due to lack of standing. In the first case, *Doyle v. Town of Litchfield*, 372

17   F.Supp.2d 288 (D. Conn. 2005), the plaintiff sought, under the Resource Conservation and

18   Recovery Act (RCRA), cleanup costs incurred in the past, as well as prospective business losses.

19   The court held that plaintiff's injuries could not be compensated under RCRA because "RCRA's

20   remedies do not provide for past cleanup costs or damages." *Id.* at 303.

21        The court in *Wademan v. Concra*, 13 F.Supp. 295 (N.D.N.Y. 1998), also held that the

22   remedies sought were beyond the scope of the environmental statutes being invoked. Plaintiffs

23   claimed that exposure to benzene gave Ms. Wademan leukemia. They sued under CERCLA, the

24   Clean Water Act, and RCRA, but the Court held that the personal injuries alleged were not

25   compensable under these environmental statutes.

26

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 15
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400    FAX (206) 447-7900

50590062.1

1    Though BNSF claims that PSR lacks Article III standing, PSR's claims meet the injury in

2    fact and redressability tests of the Constitution.  BNSF's argument is really statutory, that PSR

3    has not suffered an injury contemplated by MTCA, and that any injury it has suffered is therefore

4    not redressable under MTCA.  Because PSR has incurred remedial action costs under MTCA, as

5    discussed above, PSR has standing to bring its claims under MTCA.

6    **3.    PSR Is Asserting Its Own Rights, Not EPA's.**

7    PSR is not asserting EPA's claims in this case.  It is asserting its own, as a liquidating

8    entity.  PSR brought this action in its own name to obtain contribution toward the remedial

9    action costs it has already paid and a declaration of BNSF's proportional liability for future costs.

10    PSR has legitimate MTCA claims against BNSF, and the fact that the money PSR receives will

11    be paid to EPA for environmental cleanup and to the Natural Resource Trustees to compensate

12    for injury to the region's important natural resources is irrelevant to PSR's right to recover.

13    The absurdity of BNSF's argument is demonstrated by the combination of its rejection of

14    PSR's right to recover with its denial that EPA has a claim against it.  While over $11 million

15    has been spent to clean up a contaminated site for which it is liable, BNSF argues that EPA has

16    no claim because it has already been reimbursed, and that PSR has no claim because it paid its

17    money to EPA pursuant to a Consent Decree rather than to remedial action contractors.

18    Miraculously, the claim against BNSF has disappeared into thin air. BNSF's argument has

19    neither logic nor legal authority behind it.

20    In addition, BNSF's arguments would frustrate the goals of both federal and state cleanup

21    laws.  MTCA was enacted to protect our citizens' "fundamental and inalienable right to a

22    healthful environment."  RCW 70.105D.010(1).  As with CERCLA, its federal counterpart,

23    MTCA recognized that the costs of cleaning up befouled areas can be monumental.

24    RCW 70.105D.010(3).  The statutory scheme therefore created joint and several liability

25    "because it is essential that sites be cleaned up well and expeditiously."  RCW 70.105D.010(5).

26    The Consent Decree entered by Judge Rothstein in 1994 has the same goals:

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 16
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-7900

50590062.1

[C]essation of wood treating operations at PSR's West Seattle wood treating facility; transfer of all shares, ownership rights and interestes in PSR by Individual Settling Defendants to the Environmental Trust; the liquidation of all PSR assets; the payment of the proceeds from the liquidation to PSR creditors and, to the maximum extent possible under the circumstances, to the United States Hazardous Substance Superfund ("Fund") and the registry of this court, as set forth in the Liquidation Plan attached hereto; the orderly transfer of responsibility for the implementation of environmental response actions at the Sites from PSR to EPA contractors or designees; and issuance of covenants not to sue by Plaintiffs to Individual Settling Defendants as set forth in Section XI of this Consent Decree.

Reavis Dec. at 71.

The Consent Decree was intended to "expedite the cleanup of the Sites" and acknowledged that cleanup was "necessary to protect the public health, welfare, and the environment." *Id.* at 71, 82. Although certain individual defendants received a covenant not to sue for entering into the 1994 Consent Decree, PSR did not, and is therefore still liable. *Id.* at 93-96. The Consent Decree recognized that PSR would continue to exist as a lawful corporation, although it contemplated an ultimate dissolution. *Id.* At 83. It required that "[a]ll assets and resources of PSR shall be liquidated and the proceeds therefrom shall be disbursed by the Environmental Trust pursuant to the Liquidation Plan." *Id.* at 84. PSR and the PSR Environmental Trust were instructed to use "best efforts" to "[m]aximize the amount of funds paid into the Fund and the registry of this court, consistent with this Consent Decree." *Id.* at 85. The Consent Decree recognizes that PSR would pursue contribution claims that it had against any other Potentially Responsible Parties. *Id.* at 96. It also specifically approved the terms of the PSR Environmental Trust and the Liquidation Plan that were attached. *Id.* at 111; 115

If BNSF's standing theory were the law, in 1994 PSR would have had little incentive to enter into the Consent Decree. Instead, absent contribution rights, it would have been compelled to continue to fight EPA until such time as EPA filed a lawsuit against all responsible parties – including BNSF. Alternatively, PSR could have declared bankruptcy, and given its assets over to a bankruptcy trustee, who would have pursued the same claims PSR is now pursuing against

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER MTCA, STANDING, AND COMMON LAW CLAIMS - 17
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206)-447-7900

50590062.1

1   BNSF.  As these two scenarios illustrate, the arguments BNSF now advances are a misguided

2   (and unsupported) attempt to exalt form over substance.

3          It is highly doubtful that Judge Rothstein intended to have the cleanup of the sites foiled

4   by clever arguments that, through sleight of hand, make the claims completely disappear.  This

5   Court retained continuing jurisdiction over both the subject matter of the Consent Decree and the

6   defendants "for the purpose of enabling any of the Parties to apply to the Court at any time for

7   such further order, direction, and relief as may be necessary or appropriate for the construction or

8   modification of this Consent Decree, or to effectuate or enforce compliance with this Consent

9   Decree, or to resolve disputes in accordance with this Consent Decree."  *Id.* at 101.  This Court

10  also empowered PSR to advance the same claims that are now being brought against BNSF.  It

11  cannot credibly be said that PSR now lacks standing to bring the claims.

12  **D.     PSR's Tort Claims Should Not Be Dismissed**

13         **1.     PSR's Has Standing to Bring Its Tort Claims.**

14         Under Washington law, a nuisance is "whatever is injurious to health or indecent or

15  offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere

16  with the comfortable enjoyment of the life and property."  RCW 7.48.010.  While this definition

17  specifically requires a plaintiff to prove interference with his "free use" and "comfortable

18  enjoyment" of "the life and property," it does not require that he own or hold any possessory

19  interest in the affected property.  Courts evaluating claims for nuisance have recognized this

20  distinction, focusing on the elements of use and enjoyment rather than possession and ownership.

21  *See, e.g., Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 592, 964 P.2d 1173 (1998)

22  (nuisance is "an unreasonable interference with another's use and enjoyment of property") and

23  *Tiegs v. Watts*, 135 Wn.2d 1, 13, 954 P.2d 877 (1998) ("[a]n actionable nuisance must either

24  injure the property or unreasonably interfere with enjoyment of the property").[3]

25

26  ---
    [3] Other provisions of RCW Ch. 7.48 further confirm that the legislature contemplated that interference with "use,"
    not necessarily ownership, be a critical element of a nuisance claim.  *See, e.g.,* RCW 7.48.120, which provides,

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 18
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-7900

That a nuisance action under Washington law does not require ownership is perhaps most evident from a review of the principles of public nuisance and the case law construing those principles.[4]  RCW 7.48.130 defines a public nuisance as "one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal." RCW 7.48.140 enumerates nine conditions that constitute public nuisance, many of which arise from impacts on property that cannot be privately owned.  These include impacts on any "watercourse," "stream," "common sewer, street, or public highway" (Subsection 2); "river, harbor, or collection of water" (Subsection 3); or "public highway," "street," "alley," or "commons."  Impacts on such property that are found to offend or to interfere unreasonably with use and enjoyment of property have been held to support a claim for public nuisance.  *See, e.g., Tiegs*, 135 Wn.2d at 15 (in dispute between private parties, upholding jury instruction that any discharge of pollutants into state waters constitutes an actionable nuisance); *Miotke v. Spokane*, 101 Wn.2d 307, 331, 678 P.2d 803 (1984) (holding that owners of waterfront property stated cognizable claim for nuisance against City for discharging sewage unto river); and *Bales v. Tacoma*, 172 Wash. 494, 503, 20 P.2d 860 (1933) (upholding judgment in favor of private party against municipality for nuisance created by the dumping of trash and sewage into public waterway).

### 2.     PSR's Tort Claims Are Not Barred by the Statute of Limitations.

In addition to their MTCA claims, the Port and PSR also stated causes of action for negligence, nuisance and trespass arising out of the contamination.  BNSF contends that these claims are time-barred because Plaintiffs did not file them within three years of the date that the "cause of action accrues – in other words, when the party first gains the right to apply to the

---

"Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency . . . or in any way renders other persons insecure in life, or in the *use of property*."  (Emphasis added.)

[4] PSR has asserted causes of action for both private and public nuisance.  Complaint, ¶ 4.17

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER
MTCA, STANDING, AND COMMON LAW CLAIMS - 19
Case No. C04-1654L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-7900

50590062.1

court for relief." BNSF Motion at 23. While BNSF has stated the general rule correctly, that rule does not apply to this case, where the acts complained of constitute continuing torts. In such cases, the statute of limitations is extended as long as the tort continues. Here, the tort will continue until the contamination is abated.

Washington courts recognize the "continuing" theory of torts. *Fradkin v. Northshore Utility Dist.*, 96 Wn. App. 118, 977 P.2d 1265 (1999) (continuing trespass); *Riblet v. Portland Cement Co.*, 41 Wn. 2d 249, 248 P.2d 380 (1952) (continuing nuisance). A continuing tort is identifiable by the temporary and ongoing nature of the injury. *Fradkin,* 96 Wn. App. at 125-26. Further, the harm caused by a continuing tort must be reasonably abatable. *Id.* This is distinguished from permanent harm, which, as the name implies, includes injuries that may not be remedied even if the acts causing the impairment cease. *Hardin v. Olympic Portland Cement Co.*, 89 Wash. 320, 329, 154 P. 450 (1916).

Permanent tort claims must generally be brought within three years, as BNSF claims. The expiration of the three years, however, will not bar a continuing tort claim. *E.g., Fradkin*, 96 Wn. App. at 124-25. Rather, continuing tort claims survive until the harm is abated. *Bradley v. American Smelting and Refining Co.,* 104 Wn.2d 677, 693, 709 P.2d 782 (1985) (smelter's contamination of property was a continuing trespass: "[a]ssuming that a defendant has caused actual and substantial damage to a plaintiff's property, the trespass continues until the intruding substance is removed"). In fact, a plaintiff may bring successive tort claims every few years to address the harm from continuing nuisance and negligent actions. *Overby v. Campbell Motel Properties*, 1997 WL 288970, *2 (Wash. Ct. App. 1997) ("One suffering from an injury in the nature of a continuing nuisance may recover damages as often as he brings action thereof"), *quoting Island Lime Co. v. Seattle*, 122 Wash. 632, 635 (1922); 51 Am. Jur. 2d, *Limitations of Actions* §124. In such instances, plaintiff is allowed to claim those damages that accrued within three years before the date the lawsuit was filed and the date of trial.

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER MTCA, STANDING, AND COMMON LAW CLAIMS - 20
Case No. C04-1654L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206)-447-7900

50590062.1

1    The issue of whether a tort is continuing or permanent ordinarily is one of fact.  *Fradkin*,

2  96 Wn. App. at 126.  Here, however, it is undisputed that significant contamination remains on

3  the Site and that efforts are still underway to abate the contamination.  Since the torts alleged in

4  Plaintiff's complaint are continuing, this action was timely.

5                                     **IV.    CONCLUSION**

6    For the reasons stated above, BNSF's motion should be denied.

7    DATED this 17th day of October, 2005.

8                                                   /s/ Gillis E. Reavis

9                                                   _____
                                                    Gillis E. Reavis, WSBA #21451

10                                                  FOSTER PEPPER & SHEFELMAN PLLC
                                                    1111 Third Avenue, Suite 3400

11                                                  Seattle, WA  98101
                                                    Telephone:  (206) 447-7295

12                                                  Fax:  (206) 749-2160
                                                    E-mail:  reavg@foster.com

13                                                  Attorneys for Plaintiffs

14                                                  /s/ Stephen J. Tan

15                                                  _____
                                                    Stephen J. Tan, WSBA #22756

16                                                  Tanya Barnett, WSBA #17491_____
                                                    Rodney L. Brown, Jr., WSBA No. 13089

17                                                  CASCADIA LAW GROUP PLLC
                                                    1201 Third Avenue, Suite 320

18                                                  Seattle, WA  98101
                                                    Telephone:  (206) 292-6300

19                                                  Fax:  (206) 292-6301
                                                    E-mail:  stan@cascadialaw.com

20                                                            tbarnett@cascadialaw.com
                                                              rbrown@cascadialaw.com

21                                                  Attorneys for Plaintiffs

22

23

24

25

26

PLAINTIFFS' RESPONSE TO BNSF'S MOTION FOR SUMMARY          **FOSTER PEPPER & SHEFELMAN PLLC**
JUDGMENT REGARDING REMEDIAL ACTION COSTS UNDER            **1111 THIRD AVENUE, SUITE 3400**
MTCA, STANDING, AND COMMON LAW CLAIMS - 21               **SEATTLE, WASHINGTON  98101-3299**
Case No. C04-1654L                                        **PHONE (206) 447-4400   FAX (206)-447-7900**

50590062.1